NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2024 IL App (4th) 231191-U

NO. 4-23-1191

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
January 9, 2024
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Livingston County |
| ADAM ERIKKILA, | ) | No. 23CF378 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Mary E. Koll, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Cavanagh and Steigmann concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court affirmed, finding the circuit court did not abuse its discretion in denying defendant pretrial release.

¶ 2    Defendant, Adam Erikkila, appeals the circuit court's order denying him pretrial release pursuant to article 110 of the Code of Criminal Procedure of 1963 (Code) (725 ILCS 5/art. 110 (West 2022)), as amended by Public Act 101-652, § 10-255 (eff. Jan. 1, 2023), commonly known as the Pretrial Fairness Act (Act). See Pub. Act 102-1104, § 70 (eff. Jan. 1, 2023) (amending various provisions of the Act); *Rowe v. Raoul*, 2023 IL 129248, ¶ 52 (setting the Act's effective date as September 18, 2023).

¶ 3    On appeal, defendant argues this court should overturn the circuit court's decision because the State failed to prove by clear and convincing evidence he posed a real and present

threat to the safety of any person or persons or the community and no condition or combination of conditions could mitigate that threat. He further argues the court erred in its determination that no condition or combination thereof would reasonably ensure his appearance at later hearings or prevent him from committing another offense. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5        On October 20, 2023, the State charged defendant with one count of criminal sexual assault (720 ILCS 5/11-1.20 (West 2022)). That same day, the State filed a verified petition to deny defendant pretrial release under section 110-6.1 of the Code (725 ILCS 5/110-6.1 (West 2022)), as amended by the Act. The State alleged defendant was charged with a qualifying offense, and defendant's pretrial release posed a real and present threat to the safety of persons or the community (725 ILCS 5/110-6.1(a)(5) (West 2022)).

¶ 6        At the detention hearing, the State asked the circuit court to consider the information contained in the pretrial investigation report and proffered the following factual basis in support of its verified petition. According to the State, on October 18, 2023, officers of the Pontiac Police Department received a phone call from defendant's wife, C.E., who "report[ed] being sexually abused by her husband." C.E. "related that [defendant] had raped her while she was unconscious or inebriated where she could not consent to having sex. She further related that she had discovered this *** after finding videos where [defendant] recorded himself penetrating her vagina with his penis." C.E. "stated the videos were under a secure folder in [defendant]'s phone that was passcode protected" and "that she obtained the videos when she was looking through [defendant]'s phone in the past." While C.E. could not find her copies of the videos, she was able to send some of the images she had, "and it was evident to law enforcement the images were of her naked."

- 2 -

¶ 7          C.E. told officers she and defendant had three children together. The couple had been married for approximately eight years but recently separated. Defendant resided in Dana, Illinois, but C.E. worried "[defendant] was not at the residence in Dana and could be at their primary residence at 817 Mohave Drive in Pontiac." C.E. expressed concern over defendant's mental condition and told officers defendant suffered from severe depression and had attempted suicide in the past. C.E. also "feared [defendant] might become aggressive towards her if he learned about her calling the police," even though he had never been violent towards her or their children. Officers advised C.E. to seek an order of protection "and at some point ***, [C.E.] requested a callback again."

¶ 8          On that call, officers asked C.E. to "bring [defendant]'s phone to the police department for further investigation" and "learned that none of [defendant]'s family or friends had *** seen or heard from him all day." Defendant was eventually located lying in the backseat of his vehicle near the residence of Anthony Hobart who had previously "caught his wife *** with [defendant] at [his] home overnight." Defendant told police he was waiting for Hobart to leave so he could retrieve his phone and keys. Defendant "denied having any suicidal thoughts or plans to hurt himself."

¶ 9          Officers then spoke with defendant at the police station. Defendant indicated he understood his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966), and agreed to speak with the officers. When asked about C.E.'s allegations against him, defendant "denied any wrongdoing[,] stating that he and [C.E.] still have consensual sex regularly." Officers also requested defendant consent to a search of his phone to determine if C.E.'s allegations were accurate. Defendant agreed but initially entered incorrect passcodes. After several unsuccessful attempts, officers unlocked defendant's phone and located "several distinct videos of [defendant]

penetrating [C.E.] vaginally with his penis; and it was very evident to law enforcement she was unconscious, her body was laying limp and motionless in an unreactive state with her eyes closed."

¶ 10    During the parties' arguments to the circuit court, the State emphasized the seriousness of the offense and reiterated C.E.'s concern over retaliation from defendant after "becoming aware that she's reported these things occurring to the police." The State also noted defendant underwent an Ontario Domestic Assault Risk Assessment (ODARA) and received "a score level that 53% of the people in his category do recidivate" despite scoring a 0 out of 14 on the Virginia Pretrial Risk Assessment Instrument (VPRAI).

¶ 11    Defense counsel highlighted defendant's VPRAI score and asserted defendant "ha[d] never been in trouble before. He is employed, he does have a good job; and he would agree to any pretrial conditions imposed by this Court." Further, counsel argued defendant had "somewhere else to go" and "would agree to no contact with [the victim] or the children" even though "there ha[d] never been any kind of abuse between [the victim] and the defendant along with her children."

¶ 12    In determining whether defendant should be released from pretrial detention, the circuit court noted defendant's offense was detainable and that the State had gathered "incredibly strong evidence of [defendant's] guilt." The court also considered defendant's employment, VPRAI score, and lack of criminal history. However, the court found it "very concerning that even with that complete lack of criminal history, [defendant] still scored a 5 on the ODARA which places [him] in *** a high category." The court pointed out "80% of people who take this assessment scored lower than [defendant] did, and this assessment is designed to specifically predict domestic violence reassault, which is a much more specific indicator than the VPRAI on

that specific issue." Ultimately, the court found defendant posed a real and significant danger to the victim and no conditions or combination thereof could mitigate that risk. In doing so, the court noted C.E.'s fear for her safety after learning about "what is alleged to have happened here to her" as well as defendant's "possible suicidal ideations which also makes this a more risky situation."

¶ 13 The circuit court then entered a written order, finding (1) defendant was charged with a detainable offense and the proof was evident or presumption great that defendant committed the offense, (2) defendant posed a real and present threat to the safety of the victim of the offense, (3) no conditions or combination of conditions could mitigate the real and present threat, and (4) pretrial release should be denied because less restrictive conditions would not avoid that threat or ensure defendant's appearance as required. After the court entered its written order denying defendant pretrial release, defendant filed his notice of appeal under Illinois Supreme Court Rule 604(h)(1)(iv) (eff. Oct. 19, 2023).

¶ 14 This appeal followed.

¶ 15                                    II. ANALYSIS

¶ 16 On December 21, 2023, the Office of the State Appellate Defender, defendant's appointed counsel on appeal, filed a notice with this court indicating it was not filing a Rule 604(h) memorandum. Thus, we examine the arguments set forth in defendant's notice of appeal.

¶ 17 According to defendant's notice of appeal, the State failed to prove by clear and convincing evidence defendant posed a real and present threat to the safety of any person or the community based on the facts of this case. Defendant explained his "VPRAI *** score was 0 and [he] proffered that he would abide by pretrial conditions including reporting and any assessments

deemed necessary." Defendant asserted he "has no criminal history and [he] is 31 years old with a well paying job."

¶ 18    Defendant also argued the State failed to prove by clear and convincing evidence that no condition or combination of conditions could mitigate the real and present threat he posed to the safety of any person or the community based on the facts of this case. According to defendant, "[i]n addition to no criminal history, he has no failure to appear warrants issued as well." Finally, based on the foregoing arguments, defendant asserted the circuit court erred in its determination that no condition or combination thereof would reasonably ensure his appearance at later hearings or prevent him from committing another offense.

¶ 19    The determination of whether pretrial release should be granted or denied is reviewed under an abuse-of-discretion standard. See *People v. Jones*, 2023 IL App (4th) 230837, ¶¶ 27, 30. "An abuse of discretion occurs when the circuit court's decision is arbitrary, fanciful or unreasonable or where no reasonable person would agree with the position adopted by the [circuit] court." (Internal quotation marks omitted.) *People v. Simmons*, 2019 IL App (1st) 191253, ¶ 9, 143 N.E.3d 833. Under this standard, a reviewing court will not substitute its own judgment for that of the circuit court simply because it would have analyzed the proper factors differently. *People v. Inman*, 2023 IL App (4th) 230864, ¶ 11. Likewise, "we will not substitute our own judgment for the trier of fact on issues regarding the weight of the evidence or the credibility of the witnesses." *People v. Vega*, 2018 IL App (1st) 160619, ¶ 44, 123 N.E.3d 393.

¶ 20    Before denying pretrial release, the State must prove by clear and convincing evidence "the defendant poses a real and present threat to the safety of any person or persons or the community, based on the specific articulable facts of the case," and "no condition or combination of conditions set forth in subsection (b) of Section 110-10 of this Article can

mitigate (i) the real and present threat to the safety of any person or persons or the community." 725 ILCS 5/110-6.1(e)(2), (3)(i) (West 2022). Section 110-6.1 of the Code instructs the court to consider "the specific articulable facts of the case" and provides nine factors the court can also consider when assessing the real and present threat allegation. See 725 ILCS 5/110-6.1(g) (West 2022).

¶ 21   Here, defendant essentially asks this court to assess the situation anew and substitute our judgment for that of the circuit court—which we will not do. *Inman*, 2023 IL App (4th) 230864, ¶ 11. "[W]e are not reviewing the State's evidence anew. Instead, we are reviewing the circuit court's evaluation of that evidence for an abuse of discretion." *Inman*, 2023 IL App (4th) 230864, ¶ 11. Per the Code, the court determined defendant's offense was detainable and that the State had gathered "incredibly strong evidence of [defendant's] guilt." See 725 ILCS 5/110-6.1(e)(1) (West 2022). The court went on to consider defendant's history and characteristics, noting defendant was employed, scored a zero on the VPRAI, and had no criminal history. See 725 ILCS 5/110-6.1(g)(2) (West 2022). However, the court found it "very concerning that even with that complete lack of criminal history, [defendant] still scored a 5 on the ODARA ***." The court pointed out "80% of people who take this assessment scored lower than [defendant] did, and this assessment is designed to specifically predict domestic violence reassault, which is a much more specific indicator than the VPRAI on that specific issue." The Code allows the court to consider the specific, articulable facts of the case, the nature and circumstances of any offense, and "[a]ny other factors *** deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior." 725 ILCS 5/110-6.1(g)(1), (9) (West 2022).

¶ 22 Further, the circuit court entered a detention order compliant with the language of section 110-6.1 of the Code in which the court found (1) defendant was charged with a detainable offense and the proof was evident or presumption great defendant committed the offense (see 725 ILCS 5/110-6.1(e)(1) (West 2022)), (2) defendant posed a real and present threat to the victim of the offense (see 725 ILCS 5/110-6.1(e)(2) (West 2022)), (3) no conditions or combination of conditions under subsection 110-10(b) of the Code (725 ILCS 5/110-10(b) (West 2022)) could mitigate the real and present threat (see 725 ILCS 5/110-6.1(e)(3) (West 2022)), and (4) pretrial release should be denied because less restrictive conditions would not avoid that threat or ensure defendant's appearance as required (see 725 ILCS 5/110-6.1(h)(1) (West 2022)).

¶ 23 Because the circuit court complied with the Code's requirements and made the necessary findings, we cannot say the court's decision was arbitrary, fanciful, or unreasonable. See *Simmons*, 2019 IL App (1st) 191253, ¶ 9. Accordingly, defendant's arguments the court abused its discretion by denying him pretrial release are meritless. See *Inman*, 2023 IL App (4th) 230864, ¶ 11.

¶ 24 III. CONCLUSION

¶ 25 For all these reasons, we affirm the judgment of the circuit court.

¶ 26 Affirmed.